TRANSFER PRODUCTS, INC. and L. J. Kaiser Co., Appellants,

v.

TEXPAR ENERGY, INC., Appellee.

No. 13–88–655–CV.

Court of Appeals of Texas, Corpus Christi.

April 26, 1990.

Edwin R. Fleuriet, Richard D. Schell, Fleuriet, Schell & Franz, Harlingen, for appellants.

T. Mark Blakemore, Steven E. Goodson, Royston, Rayzor, Vickery & Williams, Brownsville, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

SEERDEN, Justice.

The trial court found that appellants converted appellee's property with implied malice. The court awarded $959.00 actual damages, and, as exemplary damages, $1,000.00 plus $34,108.00 in attorney's fees (further attorney's fees conditioned on appeal) and $12,385.60 in expenses. It ordered that appellants take nothing by their counterclaim. Appellants' four points of error challenge the awarding of all but the $959.00 actual damages and interest. The

thrust of appellants' complaints concern sufficiency of the evidence and the damages the trial court awarded. We affirm the trial court's judgment.

By point four, appellants challenge the sufficiency of the evidence to support the trial court's finding of malice. Findings of fact have the same force and effect as jury answers and are treated with equal dignity on appellate review. *De Benavides v. Warren*, 674 S.W.2d 353, 356 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). In determining "no evidence" points, we consider only the evidence and inferences supporting the findings and disregard all contrary evidence and inferences. *Preferred Heating and Air Conditioning Co. v. Shelby*, 778 S.W.2d 67, 68 (Tex.1989); *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If any evidence of probative force supports a finding, we will uphold the finding and overrule the point. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d at 661–62. Unchallenged findings are binding on appeal. *Parker v. HNG Oil Co.*, 732 S.W.2d 754, 755 n. 1 (Tex.App.—Corpus Christi 1987, no writ); *McKenzie v. Carte*, 385 S.W.2d 520, 530 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.); *see Midway Nat'l Bank v. West Texas Wholesale Supply Co.*, 453 S.W.2d 460, 461 (Tex.1970).

In arriving at its findings, the trial court may accept or reject any or all of the testimony of witnesses. *Hubler v. Oshman*, 700 S.W.2d 694, 697 (Tex.App.—Corpus Christi 1985, no writ); *De Benavides*, 674 S.W.2d at 356. The trial court is the sole judge of the credibility of witnesses. *De Benavides*, 674 S.W.2d at 359. We view the evidence and the reasonable inferences from it in the light most favorable to the findings. *Preferred Heating*, 778 S.W.2d at 68.

■ Exemplary damages are available only if the unlawful act warranting the actual damages was of a wanton and malicious nature. *Southwestern Inv. Co. v. Alvarez*, 453 S.W.2d 138, 141 (Tex.1970);

*Houston Power and Lighting Co. v. Sue*, 644 S.W.2d 835, 839 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *Courtesy Pontiac, Inc. v. Ragsdale*, 532 S.W.2d 118, 121 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.); Malice may be actual or implied. *Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 687 S.W.2d 8, 12 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *Courtesy Pontiac, Inc.*, 532 S.W.2d at 121. Actual malice is characterized by ill will or intent to injure. *Clements v. Withers*, 437 S.W.2d 818, 822 (Tex.1969); *Courtesy Pontiac, Inc.*, 532 S.W.2d at 121.

■ Implied or legal malice exists when wrongful conduct is intentional and without just cause or excuse. *Courtesy Pontiac, Inc.*, 532 S.W.2d at 121; *Fortner*, 687 S.W.2d at 12; *Webb v. Cooks', Waiters' & Waitresses' Union No. 748*, 205 S.W. 465, 468 (Tex.Civ.App.—Fort Worth 1918, writ ref'd). It is not necessary in order to find malice that hatred, dislike, spite, or resentment exists, but malice may be inferred from the doing of an unlawful act without reasonable grounds. *Pace v. McEwen*, 574 S.W.2d 792, 801 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.). Ill will may be implied from the knowing conversion of another's property without justification. *Courtesy Pontiac, Inc.*, 532 S.W.2d at 121. Malice may be implied from the knowing conversion of another's property when the defendant knew or should have known it had no legal right to the property. *First Nat'l Bank v. Brown*, 644 S.W.2d 808, 810 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); A finding of implied malice is sufficient to support exemplary damages. *See First Nat'l Bank*, 644 S.W.2d at 811; *Courtesy Pontiac, Inc.*, 532 S.W.2d at 121.

One of the trial court's findings was

5. Based upon (1) the attempt by Defendant Transfer Products, Inc. and Defendant L. J. Kaiser Co. to collect without legal authority the storage charges and costs owed by Jerry Boyles d/b/a South Texas Chemical Company from TexPar Energy, Inc., (2) the unreasonable charges sought to be collected, (3) the taking of TexPar Energy, Inc.'s property after it provided a means for

removal of the asphalt within a reasonable time after requested to do so, (4) the inexcusable act of taking the property under the guise of remedies allowed by the Uniform Commercial Code without consulting Texas law whereupon it would have been immediately known that the taking was not proper, and (5) the failure to return the property or the value thereof even after Defendants' Texas counsel, hired to respond to TexPar Energy, Inc.'s suit for injunction, forthwith advised Defendants of their improper actions, as well as the other circumstances of this case, this Court finds ill will implied from the Defendants' knowing conversion of TexPar Energy, Inc.'s property without justification.

■ Summarizing the pertinent evidence, in the light of the above rules, we find it as follows:

TexPar Energy, Inc. (TexPar) contracted to buy asphalt from Jerry Boyles d/b/a South Texas Chemical Co. Boyles, who was buying from L. J. Kaiser Co., was to deliver the asphalt to TexPar's transportation, F.O.B., via a storage and transfer facility which Transfer Products, Inc. (Transfer) owned and operated. (Neither Boyles nor his company were parties to the suit.) As an accommodation to Boyles, TexPar on Sept. 11, 1987, paid him for some 1,266 tons of asphalt which had arrived and was being stored at Transfer's facility, but had not been delivered to TexPar's transportation.

The trial court found that L. J. Kaiser Co. had included storage and transfer in the purchase price Boyles paid. TexPar had not agreed to pay any storage or transfer fees. At trial, Kristine Kaiser Trop, vice-president and counsel for L. J. Kaiser Co. and its wholly-owned subsidiary Transfer, confirmed that the agreement with Boyles included delivery of the material into his mode of transportation. Boyles testified that the initial price included storage, transfer, and heating.

Nevertheless, on Oct. 2, 1987, Trop sent TexPar a letter declaring a $1 per ton per day storage charge to be assessed from Sept. 11. It also stated that if the asphalt were not removed by Nov. 1, 1987, the company would place the asphalt in rail cars at TexPar's expense, and that the removal would be "in mitigation of any additional damages which we are incurring as a result of our storage tanks not being available for use."

On Oct. 28, 1987, Trop wrote Boyles, reminding him that they had given him a Nov. 1 deadline to remove the asphalt and to pay the charges incurred 30 days in advance. The letter concluded,

Pursuant to sections 2.703 and 2.706 of the Texas Code, you are hereby advised of our intent to re-sell all or any part of 1,266.32 tons of asphalt located in these storage tanks on November 3, 1987. We will deduct from the gross proceeds of this sale all additional costs we have incurred and will hold the balance of the proceeds in escrow for you.

You have given us no choice but to resort to our remedies under Texas law.

TexPar sent eight rail cars by Oct. 29, before the asserted deadline. However, Transfer did not fill those rail cars, but on Nov. 2, began pumping into Kaiser's customer's rail cars. Trop admitted that at the time of trial, the approximately seven tons sent to Kaiser customers had been paid for, and that they had been paid twice for that material.

Trop testified that she asked another attorney in her firm to go to the University of Louisville School of Law to talk to the professor who taught the Uniform Commercial Code class to discuss possible remedies under Texas law, and that was what she based her position on. Only after the company was served with a temporary restraining order did Trop contact Texas counsel and learn that Texas law did not permit those actions. Following the advice of the Texas attorney, Transfer immediately turned the remaining product over to TexPar and began to pump the remaining asphalt into its tank cars.

An expert witness testified that the storage amounts assessed were unreasonable in the industry. The expert had contacted major companies handling asphalt (Coastal

States and Gulf States) and found daily storage rates from five cents to thirty-four cents per ton, compared with Transfer's attempted charge of a dollar a day per ton. This evidence is sufficient to support the finding. We overrule point four.

 By point one, appellants cite as error the trial court's award of attorney's fees. In this case, the attorney's fees were included in exemplary damages. While attorney's fees are generally not allowed as actual damages, *see Turner v. Turner*, 385 S.W.2d 230, 233 (Tex.1964); *Kneip v. Unitedbank–Victoria*, 734 S.W.2d 130, 135 (Tex.App.—Corpus Christi 1987), *appeal after remand*, 774 S.W.2d 757 (Tex.App.—Corpus Christi 1989, no writ); *Bray v. Curtis*, 544 S.W.2d 816, 820 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), they can be considered in assessing exemplary damages. *InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882, 908 (Tex.App.—Texarkana 1987, no writ); *see Hofer v. Lavender*, 679 S.W.2d 470, 474 (Tex.1984). Point of error number one is overruled.

 Appellants contend by point two that the award of $47,493.60 in exemplary damages violated Tex.Civ.Prac. & Rem. Code ch. 41 (Vernon 1986 and Supp.1990), claiming that the "Tort Reform" package which became that chapter was intended to cover all torts, including conversion, superseding all contrary common law. Appellants then point out that § 41.001(6) sets out a different definition of "malice" and claims that appellee failed to prove the elements, as § 41.003(a) requires, to support an award of exemplary damages.

Tex.Civ.Prac. & Rem.Code § 41.002(a) provides that Chapter 41 "applies to an action in which a claimant seeks exemplary damages relating to a cause of action as defined by Section 33.001." The theory in this case, conversion, does not fall into any of the categories listed in § 33.001 (Vernon Supp.1990). Thus, Chapter 41 does not apply and does not supersede the common law of conversion. We overrule point two.

 Appellants' third point contends that, under Tex.Civ.Prac. & Rem.Code § 41.005, the exemplary damages should have been specifically allocated to each defendant, instead of their being held jointly and severally liable. Appellants further assert that under common law, exemplary damage awards must be specifically allocated. Appellants argue against "allowing wholly unrelated party defendants to be jointly and severally liable for exemplary damages" and aver that no evidence justifies abrogating the principle of specific awards. These companies, however, are not unrelated. Transfer was a wholly-owned subsidiary of L.J. Kaiser Co., both companies were part of the transaction, and the decisionmakers in the transaction, Kaiser and Trop, were president and vice-president of both companies. Parties acting together in effecting a conversion may be held jointly and severally liable. *Norton Refrigerated Express, Inc. v. Ritter Brothers Co.*, 552 S.W.2d 910, 913 (Tex.Civ. App.—Texarkana 1977, writ ref'd n.r.e.). This point of error is also overruled.

The trial court's judgment is affirmed.