Martha HARTLEY, Individually and as Independent Executor of the Estate of Herbert Hartley, Appellant,

v.

Gary COKER, Appellee.

No. 13–91–580–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 10, 1992.

Richard J.W. Nunez, Robertson & Nunez, Brownsville, for appellant.

Tom Fleming, J. Rolando Olvera, Jr., Atlas & Hall, Brownsville, for appellee.

Before NYE, C.J., and GILBERTO HINOJOSA and SEERDEN, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant, Martha Hartley, individually and as independent executor of the estate of Herbert Hartley, appeals the judgment of the 197th District Court in Cameron County. The District Court held that appellant did not hold a valid lien on an aircraft which was part of the estate. We affirm.

Herbert Hartley owned a 1947 Douglas, C53D–DC3–A aircraft and two C–47 aircraft. He died, and his will was admitted to probate in Cameron County Court at Law Number Two. Martha Hartley was appointed independent executrix. The probate court approved an appraisement and list of claims on August 25, 1989. However, the estate has not yet been closed.

On August 24, 1989, Bernard Fourier contracted to purchase the three aircraft and some spare parts from Martha Hartley. The agreement between Martha Hartley and Fourier provided that Hartley, the seller, would sell to Fourier, the buyer, three aircraft, including the DC–3 which is the subject of this lawsuit. The total price for the three aircraft was $160,000. The terms of the sale included a $22,000 down payment and $3000 per month. The agreement states that Herbert Hartley, the deceased, would remain the record owner of the aircraft until one-third of the purchase price has been paid. At that time Fourier would become the "full owner" of one aircraft, although the agreement did not specify which aircraft.

Fourier engaged Gary Coker, an airplane mechanic, to perform certain repairs on the DC–3 aircraft. Coker was not fully paid by Fourier. Coker then perfected an aircraft mechanic's lien on the aircraft and subsequently foreclosed on that lien. On September 12, 1990, Coker successfully bid at the foreclosure sale and purchased the aircraft.

Meanwhile, Fourier breached his agreement with Hartley by failing to make his monthly payments as specified in the purchase agreement. On April 25, 1990, Hartley filed a motion in the probate court to recover the DC–3 aircraft. Coker, who was not a party to this action initially, intervened on September 25, 1990. On October 1, 1990, the probate court entered a temporary injunction preventing Coker from removing and secreting the DC–3 aircraft. On November 27, 1990, the aircraft was seized by the Hidalgo County Sheriff under an order issued by the probate court.

Coker thereafter filed a declaratory judgment action in the 197th District Court seeking a declaration of his right of ownership in the aircraft, and seeking a temporary restraining order, a temporary injunction, and a permanent injunction prohibiting Hartley and Fourier from litigating ownership in the probate court. The District Court granted temporary relief.

Appellant, Martha Hartley, filed a plea in abatement in the District Court claiming that the probate court held dominant jurisdiction over the aircraft because the claim was filed there first. The plea was overruled. Trial on the merits was to the court. The court determined that appellant did not have any ownership rights in the aircraft. It held for Coker. Findings of fact and conclusions of law were filed. The court declared that Coker was the lawful owner of the aircraft. Appellant brings two points of error to this Court complaining of the trial court's findings that Coker is the true owner of the DC–3 aircraft, and of the court's denial of the plea in abatement.

By appellant's second point of error she complains that the trial court erred in assuming jurisdiction over the DC–3 aircraft because the probate court held dominant jurisdiction. We address the jurisdictional question first.

■ As an initial matter, appellant requests in her brief that we take judicial notice that the Cameron County Court at

Law Number Two is a "statutory probate court."[1] Appellee objects, claiming that the Cameron County Court at Law Number Two is not a "statutory probate court."

■ This Court may take judicial notice of an adjudicative fact on appeal. *Trapnell v. First Foods, Inc.,* 809 S.W.2d 606, 608 (Tex.App.—Corpus Christi 1991, writ denied); *City of Dallas v. Moreau,* 718 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); TEX.R.CIV.EVID. 201(f). Adjudicative facts are those which are not subject to reasonable dispute and 1) generally known within the trial court's jurisdiction, or 2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned. TEX.R.CIV.EVID. 201(b). Whether the Cameron County Court at Law Number Two is a "statutory probate court" is a fact which can be determined by resort to a compilation of the Laws of the State of Texas. Thus, it is an adjudicative fact because it is capable of accurate determination from sources whose accuracy cannot reasonably be questioned. *See* TEX.R.CIV.EVID. 201(b)(2).

A statutory probate court is defined in TEX.PROB.CODE ANN. § 3(ii). Section 3(ii) provides:

> (ii) "Statutory probate court" refers to any statutory court presently in existence or created after the passage of this Act, the jurisdiction of which is limited by statute to the general jurisdiction of a probate court, and such courts whose statutorily designated name contains the word "probate." County courts at law exercising probate jurisdiction are not statutory probate courts under this Code unless their statutorily designated name includes the word "probate."

*Id.* A review of the statute creating Cameron County Court at Law Number Two reveals that it has the "probate jurisdiction provided by general law for county courts." TEX.GOV.CODE ANN. § 25.0332(a)(1) (Vernon 1992). The statutorily

designated name does not include the word "probate." Thus, considering the last sentence in § 3(ii), we decline to take judicial notice that the Cameron County Court at Law Number Two is a "statutory probate court." Rather, Cameron County Court at Law Number Two is defined in the Probate Code as a "county court," or a "probate court." *See* TEX.PROB.CODE ANN. § 3(e). Appellant's motion to take judicial notice is overruled.

Appellant's second point complains that the probate court held dominant jurisdiction because the District Court and the Cameron County Court at Law Number Two held concurrent jurisdiction over the dispute involving the DC–3 aircraft, and the probate court acquired jurisdiction over the cause first. The District Court, appellant asserts, erred in overruling the plea in abatement.

## MANDATORY ABATEMENT

■ Generally, if two lawsuits are pending in courts of coordinate jurisdiction which concern the same subject matter and parties, the first court to acquire jurisdiction has dominant jurisdiction. *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (1926). This rule is based on comity, convenience, and judicial efficiency. Additionally, an important objective of this rule is to protect the plaintiffs' right to choose the forum. *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 248 (Tex.1988). In *Dolenz v. Continental Nat'l Bank,* 620 S.W.2d 572, 575 (Tex.1981), the Court succinctly stated the general rule:

> When there exists a complete identity of parties and controversies between the prior and subsequent suits, it has been held that the trial judge in the subsequent suit has no right to take any other action except to sustain the plea in abatement.

*Dolenz,* 620 S.W.2d at 575.

■ In most cases in which a plea in abatement is filed the parties and contro-

**1.** Jurisdiction is broader for a statutory probate court than for a County Court at Law exercising probate jurisdiction. *See* TEX.PROB.CODE ANN. § 5(d) (Vernon 1992) (providing broad jurisdiction to district courts and statutory probate courts, but not to a county court at law sitting as a probate court); *see William Palmer, Ind. Administrator v. The Coble Wall Trust Co.,* 36 Tex.Sup.Ct.J. 120, 121 n. 3, 1992 WL 310012 (October 28, 1992).

versies are similar, but not identical. Nevertheless, abatement may still be mandatory. "It is not required that the exact issues and all parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues." *Wyatt,* 760 S.W.2d at 247. The issue in such a case is whether the two lawsuits are "inherently interrelated." *Id. Wyatt* identified two factors the trial court should consider in determining whether two suits are inherently interrelated: 1) whether the claim alleged in the second suit could be classified as a compulsory counterclaim to the first action; and 2) whether the parties in the second action were "persons to be joined if feasible." *See Wyatt,* 760 S.W.2d at 247 (citing TEX. R.CIV.P. 39 and 97(a)).

For example, in *Wyatt* the trial court overruled the plea in abatement and proceeded to judgment. On appeal, the Supreme Court of Texas found that the issues in the two lawsuits were the same, and that the parties who were not present in the first action could have been joined. *Id.* at 248. The Court held that the trial court had no discretion to hear the case, and, as a matter of law, was required to abate. Accordingly, the cause was reversed and remanded with directions to abate in favor of the first suit.

■ At least three exceptions to the rule requiring mandatory abatement exist. The first court will not have dominant jurisdiction if: 1) the party seeking abatement is estopped from asserting the first court's jurisdiction; 2) all persons cannot be joined in the first court, or the first court does not have the power to bring such parties before the court; or 3) the parties in the first court lack intent to prosecute that action. *See Wyatt,* 760 S.W.2d at 248; *Curtis,* 511 S.W.2d at 267. If the second court finds that any of these exceptions apply, it may assume dominant jurisdiction and proceed to judgment.

## DISCRETIONARY ABATEMENT

■ Not all cases involving separate lawsuits with similar claims and parties are subject to mandatory abatement. However, if the trial court determines that the two suits are not inherently interrelated under *Wyatt,* the second court may still exercise its discretion to abate.

■ In deciding whether to abate under these circumstances, the second court must consider whether comity, convenience, and the necessity for orderly procedure in the trial of contested issues will be furthered by abatement. *See Wyatt,* 760 S.W.2d at 248; *Dolenz,* 620 S.W.2d at 575. The trial court must also consider "the practical results to be obtained, dictated by a consideration of the inherent interrelation of the subject matter of the two suits." *Dolenz,* 620 S.W.2d at 575 (quoting *Timon v. Dolan,* 244 S.W.2d 985, 987 (Tex.Civ.App.— San Antonio 1951, no writ)). Another important consideration is that the plaintiffs' right to choose the forum must be protected. *Id.,* 760 S.W.2d at 248. Furthermore, if any of the exceptions to the general rule apply the second trial court may assume dominant jurisdiction.

For example, if the two suits involve common fact issues, and it would be more convenient for the first court to hear these issues, judicial efficiency and convenience would be enhanced if the second trial court exercised discretion to abate the suit. If the plaintiffs chose the first forum, and issues litigated in the second suit could collaterally estop them from relitigating issues in the first action, then the second court reasonably could exercise its discretion to abate. And if any of the exceptions to the general rule apply, then the trial court should exercise his discretion not to abate.

■ If a plea in abatement is filed alleging that a different court has dominant jurisdiction, the second court has jurisdiction to determine disputed questions of fact relating to which court has dominant jurisdiction. *See Curtis,* 511 S.W.2d at 266. If the plea is overruled, the second court has dominant jurisdiction unless and until the appellate court decides otherwise. *Id.* at 267.

## ANALYSIS

In this case, the appellant argues that the plea should have been granted. As discussed above, we must determine three issues. The first issue is whether the two lawsuits were inherently interrelated and therefore abatement was mandatory. If the two suits were not inherently interrelated, we must then determine whether the trial court abused its discretion in deciding not to abate. Finally, we must determine whether any exceptions to the rule requiring abatement apply.

Each of these three questions is fact dependent *i.e.*, the answers depend in large part on the evidence adduced at the hearing on the motion to abate. For example, to determine whether the two lawsuits are inherently interrelated, the court must apply the law of joinder of claims and parties to the peculiar facts of the case. This is a fact dependent question upon which the trial court has broad discretion. *Williamson v. Tucker*, 615 S.W.2d 881, 886 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.) (trial court has broad discretion to decide matters relating to joinder of claims and parties). Thus, the question whether two lawsuits are inherently interrelated is, in most cases, a fact question subject to broad discretion. Furthermore, if the two lawsuits are not inherently interrelated, the trial court may exercise its discretion not to abate based on the "practical results to be obtained." This, too, is a discretionary decision upon which different results are permissible, depending upon the precise facts. Finally, the question whether the evidence supports any exceptions to the rule was identified in *Curtis* as a fact question. *Curtis*, 511 S.W.2d at 267.

By overruling the plea in abatement, the trial court implicitly held that Coker was not a person to be joined if feasible and that the claim was not compulsory, that in the interests of comity and convenience justice would be better served if the plea was overruled, and that one of the exceptions applied. Appellant's point requires us to determine whether the trial court abused its discretion in these rulings. Because, as explained above, these issues are discretionary and fact dependent, we must carefully review the evidence adduced at the hearing on the motion to abate. *Byrd v. Texas Dept. of Human Resources*, 673 S.W.2d 640, 642 (Tex.App.—San Antonio 1984, no writ).

The hearing on the motion to abate is not in the statement of facts. When no record, or a partial record is brought into this court, we must presume that the omitted portions of the record support the judgment. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 689 (Tex.1990); *Escontrias v. Apodaca*, 629 S.W.2d 697, 699 (Tex.1982). Consequently, we must overrule appellant's second point because, without reviewing the statement of facts at the hearing, there is no way we can determine with certainty whether the trial court erred in any of its findings or rulings. *Byrd*, 673 S.W.2d at 640. We overrule appellant's second point of error. Tex. R.App.P. 50(d).

In appellant's first point of error, she argues that the evidence did not support Coker's lien because the evidence "clearly shows" that appellee did not obtain the owner's or the owner's agent's consent to perform repairs on the aircraft. *See Hydra–Rig, Inc. v. ETF Corp.*, 707 S.W.2d 288 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). The premise of this argument is that Fourier was not the owner at the time Coker performed the repairs on the aircraft and obtained the lien. The evidence conflicted on the question of whether Fourier was the owner, and the District Court implicitly held he was the owner at that time.

The contract provided that Herbert Hartley, the deceased, was to remain the record owner of the aircraft until one third of the purchase price was paid. The contract also provided that Hartley was the seller and Fourier was the buyer.

The recital in the contract that Herbert Hartley was to remain the record owner is not conclusive on the question of ownership. Based on the contract, and the other evidence surrounding the transaction, the trier of fact, could conclude that the seller simply held a lien on the aircraft.

For example, in *Fidelity & Cas. Co. v. Jefferies*, 545 S.W.2d 881, 885 (Tex.Civ. App.—Tyler 1976, writ ref'd n.r.e.), the insureds brought suit to recover under an insurance policy for goods damaged in a fire. A policy exclusion eliminated coverage for goods which were no longer owned by the insured. Before the fire, the insureds allegedly sold the goods to a third party. The contract of sale provided that title did not pass to the third party until full payment was received. However, the contract also referred to the parties as the buyer and the seller, and indicated that the goods were sold. After the contract was signed, the buyer took possession. The issue was whether the insured still owned the property.

The insureds argued that the evidence established that they were still owners because the contract so stated. The insurance company argued that the evidence showed the insureds were not owners. The evidence the company relied upon was the fact that the party designated in the contract as the "buyer" took possession and control, and the fact that the terms in the contract conflicted on the question of whether a sale occurred with the insured merely retaining a security interest in the property. Based on this conflicting evidence, the jury found that appellees owned a portion of the personal property, but not the entire amount. Nevertheless, the trial court rendered judgment for the insured on the entire amount claimed.

The Tyler Court of Appeals reversed and rendered in part and affirmed. Significantly, the Court, citing TEX.BUS. & COM.CODE ANN. art. 2.401(b) [2], held that the conflicting evidence raised a fact question regarding whether the seller retained a security interest or was the owner. Since the jury found that the insured owned a portion of the property, judgment was affirmed to that extent. However, judgment was reversed and rendered as to the remainder because the jury did not find the insured owned the property, the insured submitted no ques-

tions to support a finding that the insurance company waived the exclusion, and the evidence did not conclusively establish waiver. In essence, the court of appeals held that the question of ownership under the contract of sale was a fact question to be decided by the trier of fact, and not as a matter of law, as the trial court had held.

The instant case is similar. The contract states that the deceased, Herbert Hartley, is to remain "record owner." However, it refers to Hartley as the seller and Fourier as the buyer. Furthermore, the contract states that the "seller agrees to sell" and the "buyer agrees to buy" the aircraft. The evidence showed that Fourier took possession and exercised control over the aircraft after the contract was signed.

The contractual terms relating to Hartley's retention of title conflicted. The parties did not "explicitly agree" that ownership would pass at a time different than delivery. Thus, a fact question was raised regarding whether Hartley retained ownership or a lien. Appellee's premise, which is that Fourier was not the owner, is not conclusively supported by the evidence or sustained by any findings of fact. We hold that the evidence is sufficient to support the trial court's finding of a sale. *See Jefferies*, 545 S.W.2d at 885.

Consequently, we overrule appellant's first point of error and AFFIRM the trial court's judgment.

---

**2.** TEX.BUS & COM.CODE ANN. art. 2.401(b) provides:
 Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance

with reference to the physical delivery of the goods, despite any reservation of a security interest. . . .