**TAIWAN SHRIMP FARM VILLAGE ASSOCIATION, INC. and Justin Hsu, Appellants,**

v.

**U.S.A. SHRIMP FARM DEVELOPMENT, INC., Appellee.**

No. 13–94–156–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 4, 1996.

Rehearing Overruled Feb. 1, 1996.

64

John F. Ryan, Houston, Thomas H. Burton, Houston, for appellants.

Juan A. Guerra, Raymondville, for appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

U.S.A. Shrimp Farm Development, Inc. sued Taiwan Shrimp Farm Village Association, Inc. and Justin Hsu for conversion of six water pumps. After a bench trial, the court rendered judgment for U.S.A. Shrimp, awarding actual and exemplary damages. By seven points of error, appellants challenge the trial court's judgment. We affirm.

In May 1991, U.S.A. Shrimp purchased six Kelderman stationary super pumps to be used at its shrimp farm operation in Arroyo City. Because it could not obtain permission to begin new shrimp farms, U.S.A. Shrimp stored the unused pumps in Arroyo City for almost two years. In March 1993, U.S.A. Shrimp learned that Taiwan Shrimp, Justin Hsu, and three other named defendants were in the process of converting the pumps to their use. U.S.A. Shrimp sought and received a temporary restraining order and temporary injunction. The trial court allowed U.S.A. Shrimp to take possession of the pumps and enjoined appellants from interfering with such possession. At the time it granted the temporary injunction, the trial court set the case for trial on October 18, 1993.

In July 1993, U.S.A. Shrimp amended its petition and included a claim for actual damages for conversion and exemplary damages for gross negligence and malice. The amended petition named a total of twenty-seven defendants including the original five. Shortly thereafter, the trial court allowed Taiwan Shrimp and Hsu to substitute counsel.

On October 14, 1993, appellants moved for a continuance claiming 1) that many of the twenty-seven named defendants had not been served with citation, 2) that no pre-trial conference had been held to establish a discovery schedule, and 3) that new counsel had been retained. Because the case was set for trial on Monday, October 18, 1993, the trial court called it for announcements on Friday, October 15th. At that time, the court heard and denied appellants' motion for continuance. The court then ordered the parties to return on Friday, October 22nd, for trial before the court. On October 15th, Hsu also moved for leave to file his first amended answer, counterclaim, and cross-claim.

On October 21, 1993, Cameron County Court at Law Judge Everardo Garcia was assigned to preside in the 357th District Court. Appellants were not notified of this assignment prior to commencement of the trial. On the morning of trial, appellants filed a plea in abatement, and Taiwan Shrimp filed its first amended answer. Judge Garcia

denied appellants' plea in abatement and refused to allow Taiwan Shrimp to file its first amended answer. Judge Garcia also denied Hsu's motion for leave to file his first amended answer, counterclaim, and cross-claim. All defendants, except appellants, settled with or were nonsuited by U.S.A. Shrimp.

After a bench trial, Judge Garcia found that appellants had committed conversion and awarded U.S.A. Shrimp actual damages, after offset, of $65,500.00 and prejudgment interest of $1,435.20. The trial court also awarded U.S.A. Shrimp $400,000.00 in exemplary damages ($200,000.00 against Taiwan Shrimp and $200,000.00 against Hsu). Judge Garcia signed the judgment on December 1, 1993.

On December 27, 1993, appellants filed a motion to recuse Judge Garcia. Appellants alleged that they had just learned that Judge Garcia was not a district judge. On February 8, 1994, 107th District Court Judge Benjamin Euresti, Jr. heard and denied appellants' motion to recuse. On January 3, 1994, appellants filed a motion for new trial which was denied by operation of law.

By their first point of error, appellants challenge the capacity and the subject matter jurisdiction of Judge Everardo Garcia, a statutory county court judge, to preside over this case in district court.

■ Subject matter jurisdiction is essential to the authority of a court to decide a case; it is never presumed and cannot be waived. *Texas Ass'n of Bus. v. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). Lack of subject matter jurisdiction renders a judgment void, rather than merely voidable. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990). We presume in favor of the trial court's jurisdiction unless lack of jurisdiction affirmatively appears on the face of the petition. *Giddens v. State*, 818 S.W.2d 501, 502 (Tex.App.—Corpus Christi 1991, no writ).

Appellants are not challenging the jurisdiction of the district court, rather they are challenging the authority of Judge Garcia to preside over district court matters when the amount in controversy exceeds $100,000.00.

Appellants rely on Tex.Gov't Code Ann. § 25.0332(a)(2) and one sentence of Tex. Gov't Code Ann. § 74.121(a)[1] to support their contention. Appellants' reliance on these provisions is misplaced.

Section 25.0332(a)(2) of the Government Codes provides as follows:

(a) In addition to the jurisdiction provided by Section 25.003 and other law, a county court at law in Cameron County has:

(2) concurrent jurisdiction with the district court in civil cases in which the amount in controversy exceeds $500 but does not exceed $100,000, excluding interest.

Tex.Gov't Code Ann. § 25.0332(a)(2) (Vernon Supp.1995). Section 25.0003 provides, in relevant part, as follows:

(c) In addition to other jurisdiction provided by law, a statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has concurrent jurisdiction with the district court in:

(1) civil cases in which the matter in controversy ·exceeds $500 but does not exceed $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition[.]

Tex.Gov't Code Ann. § 25.0003(c) (Vernon Supp.1995).

Appellants argue that § 25.0332 limits statutory county court *judges* from hearing cases where the maximum amount in controversy exceeds $100,000. We do not agree.

■ Every word in an enactment is presumed to have a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981). After reviewing Chapter 25 of the Government Code we conclude that the legislature did not intend the terms "judge," "statutory county court," and "county court at law" to be synonymous. *See* Tex.Gov't Code Ann. § 25.0004 (Vernon 1988) ("A statutory county court or its judge ...."); § 25.0006 (Vernon 1988) ("The judge of a statutory county court must ....");

---

1. Appellants rely on the following sentence in § 74.121(a): "A judge may not sit or act in a case unless it is within the jurisdiction of his court."

§ 25.0332(a) ("In addition to ... a county court at law in Cameron County has ..."). Section 25.0332(a)(2) sets the jurisdictional limits of the county courts at law in Cameron County and of judges when they preside in such courts. We conclude that the statute only limits the subject matter jurisdiction of the *Cameron County courts at law.*

Appellants also argue that TEX.GOV'T CODE ANN. § 74.121(a) provides that a judge may not sit or act in a case unless the case falls within the jurisdiction of that judge's court. Appellants take this out of context. Section 74.121(a) provides as follows:

(a) The judges of constitutional county courts, statutory county courts, justice courts, and small claims courts in a county may transfer cases to and from the dockets of their respective courts, except that a case may not be transferred from one court to another without the consent of the judge of the court to which it is transferred and may not be transferred unless it is within the jurisdiction of the court to which it is transferred. The judges of those courts within a county may exchange benches and courtrooms with each other so that if one is absent, disabled, or disqualified, the other may hold court for him without the necessity of transferring the case. Either judge may hear all or any part of a case pending in court and may rule and enter orders on and continue, determine, or render judgment on all or any part of the case without the necessity of transferring it to his own docket. *A judge may not sit or act in a case unless it is within the jurisdiction of his court.* Each judgment and order shall be entered in the minutes of the court in which the case is pending.

TEX.GOV'T CODE ANN. § 74.121(a) (Vernon 1988 and Supp.1995) (emphasis added). We conclude that § 74.121 deals solely with the transfer of cases and the exchange of benches between the judges of constitutional county courts, statutory county courts, justice courts, and small claims courts within a county. The sentence relied upon by appellants only limits the authority of these specific judges to transfer cases and exchange benches between these specific courts.

The record reflects that on October 21, 1993, Darrell Hester, Presiding Judge of the Fifth Administrative Judicial Region, appointed Judge Garcia to sit on the 357th District Court of Cameron County on October 22, 1993. The order provides, in relevant part, as follows:

Pursuant to Section 74.056, Tex.Gov't Code, I hereby assign the Honorable Everardo Garcia[,] Judge of the County Court at Law No. 1[,] To [sic] the 357th District Court of Cameron County, Texas[.]

This assignment is for the period beginning October 22, 1993, and ending October 22, 1993, provided that it shall continue thereafter so long as may be necessary for the assigned judge to complete trial of any cause begun during such period, and to pass on motions for new trial and all other matters growing out [sic] any cause heard by the assigned judge during such period.

Chapter 74, Subchapter C of the Government Code provides for the assignment of judges. Regular district, constitutional county, and statutory county court judges may be assigned by the presiding judge of the administrative region in which they reside to sit in other courts within the region when necessary to dispose of accumulated business. TEX.GOV'T CODE ANN. §§ 74.052(a), 74.054(a)(1) (Vernon 1988 & Supp.1995). However, a statutory county court judge may not be assigned to hear a matter pending in a district court outside the county of the judge's residence. TEX.GOV'T CODE ANN. § 74.054(b) (Vernon Supp.1995). A judge assigned under the provisions of Chapter 74 has all the powers of the judge of the court to which he is assigned. TEX.GOV'T CODE ANN. § 74.059(a) (Vernon 1988).

We conclude that on October 22, 1993, when this case was called for trial, Judge Garcia had all the powers of the judge of the 357th District Court. In addition, the face of the petition establishes that subject matter jurisdiction was proper in the 357th District Court and before its judge. We hold that Judge Garcia had authority to preside over this case in the 357th District Court of Cam-

eron County. Accordingly, we overrule appellants' first point of error.

By their third point of error, appellants contend that the trial court abused its discretion in denying their plea in abatement because of a prior pending federal lawsuit.

In 1991, Hsu filed suit in the United States District Court for the Southern District of Texas, Brownsville Division, against U.S.A. Shrimp and other named defendants. The federal suit is entitled, *Ming Lin, et al. v. Taiwan Shrimp Farm Dev., Inc.*, and numbered, Civil Action No. B 91–190. As plaintiffs in the federal suit, appellants based their complaints on the Federal Interstate Land Sales Act, federal securities laws, Texas securities laws, the Texas Business Opportunity Act, the Texas Deceptive Trade Practices–Consumer Protection Act, and fraud. As to all claims, appellants sought monetary damages. Appellants argue that the federal case will resolve the issue of the parties' rights to the six pumps and could contradict the finding of conversion in the instant case. We must determine whether the lawsuits are inherently interrelated and whether abatement is mandatory. *Hartley v. Coker*, 843 S.W.2d 743, 748 (Tex.App.—Corpus Christi 1992, no writ).

It is well settled that when suit would be proper in more than one court, the court in which suit is filed first acquires dominant jurisdiction to the exclusion of other courts. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex.1988). Mere pendency of an action in federal court involving the same parties and similar issues is not a reason for abating a subsequent state court proceeding. *Space Master Int'l v. Porta–Kamp Mfg.*, 794 S.W.2d 944, 946 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Williamson v. Tucker*, 615 S.W.2d 881, 885 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.). However, when an inherent interrelation of the subject matter exists in the two pending lawsuits, a plea in abatement in the second action must be granted. *Wyatt*, 760 S.W.2d at 248. In determining whether an inherent interrelationship exists, courts should be guided by the rule governing persons to be joined if feasible and the compulsory counterclaim rule. *Id.*

The record reflects that the parties in the instant case are also involved in the federal case. However, the two cases do not arise out of the same transaction or occurrence. The federal case, which arose out of alleged land and securities violations, deceptive trade practices, and fraud that occurred in 1990, was filed two years before appellants converted the six pumps to their use. *See Williamson*, 615 S.W.2d at 886 (holding that there was no abuse of discretion in refusing to stay state court proceeding that was filed after pending federal court proceeding, because, among other reasons, federal case was instituted by defendant in federal court several years before plaintiff instituted subsequent state court proceeding). In addition, although appellants filed a second amended complaint in the federal suit in May 1993, the complaint does not address ownership of the pumps nor any other property.

Not all cases involving separate lawsuits with similar claims and parties are subject to mandatory abatement. *Hartley*, 843 S.W.2d at 747. If the trial court determines that the two suits are not inherently interrelated, the second court may exercise its discretion to not abate based on the "practical results to be obtained." *Id.* at 748. The appellate court must determine whether the trial court abused its discretion in deciding not to abate. *Id.*

A judgment in the federal case, as it stands now, would not resolve the issue of ownership or determine the amount of damages caused by conversion of the pumps. Accordingly, we hold that the two lawsuits are not inherently interrelated and that the trial court did not abuse its discretion in denying the plea in abatement. Appellant's third point of error is overruled.

By their second point of error, appellants challenge the trial court's denial of 1) their motion for continuance, 2) Justin Hsu's motion for leave to file a first amended answer, counterclaim, and cross-claim, and 3) Taiwan Shrimp's filing of a first amended answer, counterclaim, and cross-claim. We will address each of these separately.

*Appellants' Motion For Continuance*

Appellants filed a motion for continuance on October 14, 1993 because their attorney was relatively new to the case, because litigation was only six months old, and because no pre-trial conference had been held to establish a discovery schedule. Appellants argued that a vital deposition was not taken because a pre-trial conference had not been held.

■■■■ It is well established that the grant or denial of a motion for continuance is within the trial court's sound discretion. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex.1988). The exercise of such discretion will not be disturbed on appeal unless the record discloses a clear abuse of discretion. *Id.*

■■■■ According to Tex.R.Civ.P. 166, a trial court may in its discretion summon the parties and counsel to a pre-trial conference to establish a discovery schedule as well as to address other matters. However, such a conference is not mandatory. Tex.R.Civ.P. 201 provides that any person may be compelled to appear and give testimony by deposition in a civil action. In addition, Tex. R.Civ.P. 166c provides that parties may by written agreement take depositions at any time or place, before any person, upon any notice, and in any manner. The failure of a litigant to diligently utilize the rules of civil procedure for discovery purposes will not authorize the granting of a continuance. *Wood Oil*, 751 S.W.2d at 865. The trial court is not required to grant a motion for continuance when the allegations in the motion, examined in light of the record, show a complete lack of diligence on the part of the movant. *Id.* Unless appellants can make a strong showing of what specific trial preparations a continuance would allow, they will not establish abuse of discretion. *Standard Sav. Ass'n v. Cromwell*, 714 S.W.2d 49, 51 (Tex. App.—Houston [14th Dist.] 1986).

■■■■ The need for one deposition is not a strong showing of the need for a continuance. In addition, we find no order in the record regarding discovery. Thus, nothing prevented appellants from deposing the vital witness at any time prior to trial. Moreover, appellants' counsel knew, when he was hired

in July 1993, of the October trial setting and of the amended cause of action.

■■■■ Appellants also contend that a continuance was necessary because twenty-two defendants had not been served with citation as of October 14, 1993. The record does not reflect how these unserved defendants were necessary to the appellants' case. Moreover, U.S.A. Shrimp nonsuited these twenty-two defendants at the beginning of the trial, thus eliminating the need for a continuance. We hold that the trial court did not abuse its discretion by denying appellants' motion for continuance.

*Justin Hsu's Motion for Leave to File His First Amended Answer, Counterclaim, and Cross-claim and Taiwan Shrimp's First Amended Answer, Counterclaim, and Cross-claim*

Appellants contend that the trial court abused its discretion by refusing to allow them to file amended answers, counterclaims, and cross-claims.

■■■■ Hsu argues that he did not need to obtain leave of court to file his amended answer, counterclaim, and cross-claim because it was timely filed. Rule 63 of the Texas Rules of Civil Procedure provides, in relevant part, as follows:

Parties may amend their pleadings, respond to pleadings on file of other parties ... and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter ... shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

Tex.R.Civ.P. 63. Appellants' interpret the Rule 63 "date of trial" to mean the date trial actually begins, however, this language refers to the date the case is set for trial. *AmSav Group, Inc. v. American Sav. & Loan Ass'n of Brazoria County*, 796 S.W.2d 482, 490 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Trial was set for October

18th. Hsu filed his amended answer, counterclaim, and cross-claim on October 15th. We conclude that Hsu's amended pleading was filed within seven days of the date of trial. Thus, leave of court was required.

Appellants sought to file counterclaims against U.S.A. Shrimp and a cross-claim against Chi Ming Tao. In addition, on the day of trial, Taiwan Shrimp attempted to introduce, for the first time, the doctrine of unclean hands as a defense.

■ A party's right to amend under Rule 63 is subject only to the opposing party's right to show surprise. *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 940 (Tex.1990). U.S.A. Shrimp presented evidence of surprise. U.S.A. Shrimp showed the trial court that appellants' amended answers and cross-claims would introduce a new defense only three days before commencement of the trial and add a new defendant who could not possibly be ready for trial in three days.

■ A trial court may conclude that an amendment would reshape the cause of action, prejudice the opposing party, and unnecessarily delay the trial. *Id.* The decision to accept or reject an amendment is within the trial court's discretion. *Alamo Bank of Tex. v. Palacios,* 804 S.W.2d 291, 293 (Tex. App.—Corpus Christi 1991, no writ). When the record shows a lack of diligence in bringing the reshaped cause before the court and where the matter pleaded appears to have been known by the party seeking to amend and is not based on any newly discovered facts, the court does not abuse its discretion by refusing to allow the amendment. *Trailways, Inc. v. Clark,* 794 S.W.2d 479, 492 (Tex.App.—Corpus Christi 1990, writ denied).

■ The issues alleged in appellants' counterclaims and cross-claims are identical to those raised in the federal suit appellants filed against U.S.A. Shrimp and Tao in 1991. In addition, Taiwan Shrimp knew the facts alleged in support of its unclean hands defense from the outset of this litigation. Because U.S.A. Shrimp provided evidence of surprise and because appellants could have

amended their answers well in advance of October 15, we hold that the trial court did not abuse its discretion in denying appellants leave to file their amended answers, counterclaims, and cross-claims. We overrule appellants' second point of error.

By their fourth point of error, appellants challenge the factual sufficiency of the evidence supporting the trial court's finding that U.S.A. Shrimp suffered actual damages of $75,000 for the decrease in fair market value of the six pumps.

■ Findings of fact entered in a case tried to the bench are of the same force and dignity as a jury's verdict upon special questions. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them[2] by the same standards as are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a special question. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

■ When a party without the burden of proof complains on appeal of a jury finding, the appropriate points of error are that there is "no evidence" or "insufficient evidence" to support the jury finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). When we review an "insufficient evidence" or factual sufficiency of the evidence point, we consider, weigh, and examine all of the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ The measure of damages to personal property is the difference in market value of the property immediately before and immediately after the injury at the place where

---

**2.** *First Nat'l Bank v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

damages occurred. *Thomas v. Oldham*, 895 S.W.2d 352, 359 (Tex.1995); *Pasadena State Bank v. Isaac*, 149 Tex. 47, 228 S.W.2d 127, 128 (1950). The trial court found actual damages of $79,000 ($75,000 for the decrease in fair market value of the pumps and $4,000 for U.S.A. Shrimp's out-of-pocket expenses for retrieval of the pumps). The only evidence of the fair market value of the six pumps was offered by Terry Tao, president and principal shareholder of U.S.A. Shrimp. Appellants challenge Tao's competency to provide this evidence.

▆▆▆▆ A property owner can testify to market value as long as testimony shows it refers to market value and not intrinsic value. *Porras v. Craig*, 675 S.W.2d 503, 504–05 (Tex.1984). A lay witness can give his opinion on the amount of damages as long as he testifies about matters within his knowledge. *Coker v. Burghardt*, 833 S.W.2d 306, 307 (Tex.App.—Dallas 1992, writ denied). We conclude that, as U.S.A. Shrimp's president and principal shareholder, Tao could establish the value of the pumps if his opinion was based on fair market value.

▆▆▆▆ The record reflects that an invoice was admitted into evidence showing that U.S.A. Shrimp paid $19,700 for each pump. Purchase price, however, is generally not admissible to show fair market value at a particular later time. *Redman Homes, Inc. v. Ivy*, 901 S.W.2d 676, 685 (Tex.App.—El Paso 1995, n.w.h.); *Rosenfield v. White*, 267 S.W.2d 596, 601 (Tex.Civ.App.—Dallas 1954, writ ref'd n.r.e.); *San Antonio Pub. Serv. Co. v. Murray*, 59 S.W.2d 851, 854 (Tex.Civ. App.—Beaumont 1933), *aff'd*, 127 Tex. 77, 90 S.W.2d 830 (1936).

Tao testified that sometime after the original transaction he learned from the pump manufacturer that a new pump would cost $22,500. Based on this information, Tao testified that the fair market price of each converted pump was $22,500. Tao was asked several times whether this amount was the fair market value. Each time, he responded affirmatively. However, Tao also testified

that immediately before the conversion was discovered he informed a potential buyer that the pumps could be purchased for $19,-700 each.

▆▆▆▆ In a conversion case, actual damages are determined by market value of the property converted at the place and time of conversion. *Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex.1980); *First Nat'l Bank of Missouri City v. Gittelman*, 788 S.W.2d 165, 169 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Market value is the price property would bring if it were offered for a sale by a willing but not obligated seller and purchased by a willing but not obligated buyer. *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 246 (Tex.1981); *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex.1972).

U.S.A. Shrimp is not seeking actual damages to replace the pumps. Instead, it is seeking loss of value because the pumps were damaged when appellants sandblasted, re-painted, and installed them in salt water. Tao testified that the fair market value of each pump after conversion was $10,000.

The trial court found actual damages of $75,000 for the decrease in fair market value of the pumps. The record does not reflect how the trial court calculated the decrease in fair market value of the pumps. It appears, however, that the trial court believed Tao's testimony that the fair market value of the six pumps before conversion was $135,000,[3] and that the fair market value of the six pumps after conversion was $60,000.[4] Thus, a decrease in fair market value of $75,000.[5]

▆▆▆ After considering all of the evidence, we do not find that the evidence standing alone is too weak to support the finding that U.S.A. Shrimp suffered actual damages in the amount of $75,000 for the decrease in fair market value of the six pumps. We also do not find that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. Accordingly, we hold that the evidence is factually sufficient to support the trial court's

---

**3.** $22,500 × 6 = $135,000.

**4.** $10,000 × 6 = $60,000.

**5.** $135,000 − $60,000 = $75,000.

finding. We overrule appellant's fourth point of error.

By their fifth, sixth, and seventh points of error, appellants attack the legal and factual sufficiency of the evidence to support the trial court's findings of fact and conclusions of law regarding exemplary damages. Specifically, appellants claim that the trial court erred in concluding that their conduct constituted actual malice, legal malice, and gross negligence.

■ When we review a "no evidence" or legal sufficiency of the evidence point, we consider only the evidence and reasonable inferences that tend to support the jury's finding, and we disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Responsive Terminal Sys. Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989). We overrule the point and uphold the finding if we find any evidence to support the finding. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

As we previously stated, when we review an "insufficient evidence" or factual sufficiency of the evidence point, we consider, weigh, and examine all of the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc.*, 772 S.W.2d at 445. We set aside the verdict only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza*, 395 S.W.2d at 823.

■ An award of exemplary damages is proper when it is based on a finding of gross negligence, malice, or fraud. Tex.Civ. Prac. & Rem.Code Ann. § 41.003(a) (Vernon Supp.1995). As a general rule, an affirmative finding as to either malice or gross negligence will support an award of exemplary damages. *Missouri Pac. R.R. Co. v. Lemon*, 861 S.W.2d 501, 517 (Tex.App.—Houston [14th Dist.] 1993, writ dism'd by agr.). Malice may be actual or implied. *Transfer Prod. v. TexPar Energy*, 788 S.W.2d 713, 715 (Tex. App.—Corpus Christi 1990, no writ); *Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 687 S.W.2d 8, 12 (Tex.App.—

Dallas 1984, writ ref'd n.r.e.); *Courtesy Pontiac, Inc. v. Ragsdale*, 532 S.W.2d 118, 121 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.). Actual malice is characterized by ill will or intent to injure. *Clements v. Withers*, 437 S.W.2d 818, 822 (Tex.1969); *Transfer Prod.*, 788 S.W.2d at 715. Implied or legal malice exists when wrongful conduct is intentional and without just cause or excuse. *Transfer Prod.*, 788 S.W.2d at 715. Malice may be established by direct or circumstantial evidence, and a plaintiff need not prove that the defendant acted with personal spite, but may simply prove that the defendant committed negligent acts in reckless disregard of another's rights and with indifference as to whether that party would be injured. *Lemon*, 861 S.W.2d at 517; *Transfer Prod.*, 788 S.W.2d at 715. Ill will may be implied from the knowing conversion of another's property without justification. *Transfer Prod.*, 788 S.W.2d at 715. Malice may be implied from the knowing conversion of another's property when the defendant knew or should have known that there was no legal right to the property. *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927 (Tex.App.—Fort Worth 1994, writ denied); *Transfer Prod.*, 788 S.W.2d at 715. A finding of implied malice is sufficient to support exemplary damages. *Bransom*, 874 S.W.2d at 927; *Transfer Prod.*, 788 S.W.2d at 715.

■ The evidence establishes that since May 1991, the six pumps belonged to U.S.A. Shrimp and that prior to March 1993, the pumps were never used. Although appellants claimed they believed the pumps actually belonged to Chung Mei Shrimp Farm Consulting, Inc., testimony from Johnson Yang, Chung Mei's manager, established that Chung Mei neither claimed ownership rights nor authorized anyone to use the pumps. Furthermore, when one of U.S.A. Shrimp's prospective purchasers attempted to inspect the pumps, Taiwan Shrimp told him that U.S.A. Shrimp did not own the pumps. Thus, appellants knew that U.S.A. Shrimp claimed ownership of the pumps and intended to sell them. The record also shows that appellants moved the pumps from U.S.A. Shrimp's storage location to Taiwan Shrimp's property, and that Taiwan Shrimp moved the

pumps without asking U.S.A. Shrimp about its claim of right to sell and without seeking approval from anyone else appellants believed to be the owners. Appellants then sandblasted, repainted, and installed the pumps in salt water pumping stations on their shrimp farms. We hold that this conduct is sufficient to support the trial court's findings of actual and implied malice. Appellants knowingly converted the pumps without justification and intentionally changed their appearance. By doing so, appellants showed careless disregard for U.S.A. Shrimp's right to sell the pumps as unused.

Appellants also challenge the award of exemplary damages against Justin Hsu. Appellants claim that Hsu was merely acting in his capacity as president of Taiwan Shrimp.

 A corporation's employee is personally liable for tortious acts which he directs or participates in during his employment. *Leyendecker & Assoc., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984). Where corporate directors and officers actively participate in the conversion of another's property by instigating, aiding, or abetting the corporation, they may be held liable as joint tortfeasors with the corporation. *N.S. Sportswear, Inc. v. State,* 819 S.W.2d 230, 232 (Tex.App.—Austin 1991, no writ); *Earthman's, Inc. v. Earthman,* 526 S.W.2d 192, 206 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ); *Bower v. Yellow Cab Co.,* 13 S.W.2d 708, 710 (Tex.Civ. App.—El Paso 1929, writ ref'd).

Hsu was president of Taiwan Shrimp and held powers of attorney for other stockholders. He admitted being at a meeting on January 4, 1993, during which the stockholders of Taiwan Shrimp agreed to accept joint responsibility for the use of the pumps. He also admitted that he did not know whether Taiwan Shrimp had permission to use the pumps. Hsu was an instigator in the conversion of the pumps and accepted responsibility for their use. Hsu was also responsible for defacing the pumps in a manner that prevented U.S.A. Shrimp from selling them as new. The trial court could have believed that Hsu and Taiwan Shrimp deliberately altered the appearance of the pumps to prevent their recovery.

Accordingly, after considering all of the evidence, we hold that the evidence is legally and factually sufficient to support the trial court's conclusion that appellants' conduct constituted actual malice, legal malice, and gross negligence and the trial court's finding of exemplary damages. We overrule appellants fifth, sixth, and seventh points of error.

We affirm the judgment of the trial court.