**In re ESTATE of Augustin Villafuerte ORTIZ, Deceased, Appellant.**

**No. 13–90–357–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1991.

Rehearing Overruled Oct. 3, 1991.

---

Frank E. Weathered, Corpus Christi, for appellant.

Rudolfo Davila, Victoria, pro se.

Before SEERDEN, KENNEDY and DORSEY, JJ.

## OPINION

SEERDEN, Justice.

Monico Ortiz Gutierrez and Arcadia Villafuerte Gonzales, beneficiaries and heirs of the Estate of Augustin Villafuerte Ortiz, deceased, acting by and through their attorney in fact, Alicia Abdala y Matuk ("Beneficiaries") appeal a probate court's order approving the Estate's payment of claims to Arturo Funeral Chapels ("Funeral Home") and Rudolfo G. Davila, an attorney. The Beneficiaries challenge the legal and factual sufficiency of the evidence to support the trial court's findings that the payment of these claims was just and reasonable. We affirm the trial court's judgment.

The decedent was killed in an automobile accident in Victoria County, Texas, on December 2, 1989. He was a Mexican citizen and his heirs are his parents, Mexican citizens who reside in Mexico. He was taken to DeTar Hospital and treated unsuccessfully by Dr. Del Williams. The Funeral Home retrieved decedent's body from the hospital and, through telephone calls to the Beneficiaries in Mexico, handled the funeral arrangements. By the end of December 1989, the Beneficiaries had arranged to have as their attorney in fact Alicia Abdala, the Mexican Consular in Corpus Christi.

She, in turn, hired attorney Tony Bonilla to represent the Beneficiaries.

On January 29, 1990, pursuant to TEX.PROBATE CODE ANN. § 131A (Vernon Supp.1991), but without written notice to the Beneficiaries, the probate court appointed Hildo Luera, the director of the Funeral Home, as the temporary administrator of the Estate. Pursuant to the power granted him under the trial court's order, Luera subsequently applied to the court for approval of a contract with attorney Rudolfo G. Davila, in which Davila was to represent the Estate in recovering damages resulting from Ortiz's death. Pursuant to the terms of the contract, Luera, as the administrator of the Estate, agreed to assign Davila 25% interest in the property to be recovered by the Estate, which at that time, was expected to be insurance proceeds from one of the insurance carriers for one of the drivers involved in the automobile collision. The court approved Luera's contract on behalf of the Estate with Davila as being in accordance with TEX.PROBATE CODE ANN. § 233 (Vernon 1980).

In early March 1990, the court approved the Estate's inventory of property and appraised values and a list of the claims against the Estate filed by Luera. The only property of the Estate was "Insurance Payable to Estate," and it was appraised as having an unknown value. The only listed claim against the Estate was by the Funeral Home and was for $4,304.00.

On May 17, 1990, in Victoria County, Luera, pursuant to his powers as temporary administrator, signed a full release and indemnity agreement with the insurance company for one of the drivers involved in the collision in exchange for $25,000.00 being released to the registry of the court. Davila also signed the release on behalf of the Estate. A similar release and indemnity agreement was signed by Abdala, on behalf of the Beneficiaries, and Bonilla.

Several days later, Abdala, acting again on behalf of the Beneficiaries, filed an application on behalf of the Beneficiaries for the proceeds of the Estate, noting in the application that Bonilla had requested that the creditors reduce their bills. On May

21, 1990, the court granted Luera's motion to make him the permanent administrator of the Estate. On the same day, the court entered an order that the $25,000.00 was to be deposited in the court's registry and that no withdrawals were to be made without prior written order of the court.

Subsequently, acting as permanent administrator, Luera filed an application for authority to settle certain specific claims against the Estate brought by Dr. Del Williams and DeTar Hospital for $3,725.00 and $5,398.62, respectively.[1] On June 13, 1990, after a hearing, the court entered a written order that the claims of Dr. Williams and DeTar Hospital, as well as those of the Funeral Home and attorney Davila, be paid. Pursuant to the order, the Funeral Home was to be paid $3,395.00 and Davila was to be paid $6,250.00.[2] The payments to the Funeral Home and Davila were strongly contested at the hearing.

On June 20, 1990, Abdala, as representative of the deceased's parents, asked for a rehearing on the order setting out the payment of claims. The court considered this motion as a motion for new trial and denied it.

On July 19, 1990, pursuant to Abdala's timely request, the trial court entered findings of fact and conclusions of law. Included in the findings of fact was a finding that the claim in favor of the Funeral Home was just and reasonable for the amount of $3,395.00 and all legal offsets, payments and credits were allowed. Also included was a finding that the claim of attorney's fees of $6,250.00 in favor of Davila represents 25% of the property recovered by the estate and is in accordance with the employment contract approved by the court. On appeal, the Beneficiaries challenge the factual and legal sufficiency of these two findings.

■ Appellate courts review a trial court's findings of fact by the same stan-

dards used to review the sufficiency of the evidence to support a jury's findings. *Nelson v. Dallas Indep. School Dist.*, 774 S.W.2d 380, 382 (Tex.App.-Dallas 1989, writ denied); *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.–Dallas 1981, writ ref'd n.r.e.). In reviewing an attack on the legal sufficiency of the evidence or a "no evidence" point, we consider only the evidence and reasonable inferences that tend to support the jury findings, and disregard all evidence and inferences to the contrary. *Preferred Heating & Air Conditioning Co. v. Shelby*, 778 S.W.2d 67, 68 (Tex.1989); *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *Transfer Prod., Inc. v. TexPar Energy, Inc.*, 788 S.W.2d 713, 715 (Tex.App.–Corpus Christi 1990, no writ). We view the evidence and reasonable inferences from it in the light most favorable to the findings. *Preferred Heating*, 778 S.W.2d at 68; *Transfer Prod.*, 788 S.W.2d at 715. If any evidence of probative force supports the finding, we must overrule the point and uphold the finding. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

■ In reviewing an attack on the factual sufficiency of the evidence, we consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. *PlasTex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex.1989). Having done so, this court should set aside the verdict only if the evidence standing alone is too weak to support the finding, or the answer is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951). In this regard, *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) requires a court of appeals to detail

---

1. The amounts of these bills are half the original amounts; the reduced amounts were the result of negotiations between the medical care providers and Bonilla. The portion of the trial court's judgment approving payment of these claims is not contested on appeal.

2. There has been no payment of the Funeral Home's claim or of Davila's claim pursuant to an order of the probate court suspending withdrawal of funds from the registry of the court pending appeal.

the relevant evidence in its opinion and state how the factfinder's decision is so against the great weight and preponderance of the evidence as to be manifestly unjust and in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *Pool,* 715 S.W.2d at 635.

 Factfinding is the exclusive province of the trial court. An appellate court cannot make factual findings, it can only "unfind" facts. *Texas Nat'l Bank v. Karnes,* 717 S.W.2d 901 (Tex.1986); *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 744–45 (Tex.1986). If an appellate court sustains a point of error finding the evidence factually insufficient, it must remand for a new trial. *Glover v. Tex. Gen. Indem. Co.,* 619 S.W.2d 400, 401–02 (Tex.1981). This court has no jurisdiction to render judgment based on an insufficiency point. *See B.J. Valve & Fitting Co. v. Elliott Valve Repair Co.,* 679 S.W.2d 1 (Tex.1984).

 By their first point of error, the Beneficiaries contend that the evidence is factually and legally insufficient to support the trial court's finding and conclusion that Davila's attorney's fees of $6,250.00 were just and reasonable. In a probate case, evidence must be presented on the issues of reasonableness and necessity of the services performed by an attorney or on the issue of the reasonableness of the amount requested in order to support an award of attorney's fees. *Barrett v. Parchman,* 675 S.W.2d 289, 291 (Tex.App.–Dallas 1984, no writ); *Griffin v. Barr,* 587 S.W.2d 477, 478–79 (Tex.Civ.App.–Dallas 1979, no writ); *Burton v. Bean,* 549 S.W.2d 48, 51 (Tex. Civ.App.–El Paso 1977, no writ). Since contingency contracts of up to 30% are specifically approved by Tex.Probate Code Ann. § 233 (Vernon 1980), we do not review the reasonableness of the amount of fees requested. We review the evidence regarding whether Davila's employment was reasonable and necessary and whether he was needed to perform or actually performed the services specified by the contract, namely to represent the Estate in recovering damages resulting from Ortiz' death.

 At the hearing on the contested claims, Davila testified that he negotiated the settlement with the insurance company and that he dealt directly with its attorneys. The settlement agreement between Luera, on behalf of the Estate, and the insurance company which is in the transcript is signed by Luera and Davila. Davila's testimony is some evidence of probative force which supports the trial court's finding.

Moreover, although neither Luera nor Davila presented any specific evidence regarding the reasonableness and necessity of Davila's services, the trial court could have inferred from the evidence that it was reasonable and necessary to hire Davila to represent the Estate in order to recover damages; as noted above, Davila stated that he negotiated with the insurance company's attorneys for a $25,000.00 settlement and he signed the settlement and release agreement as the Estate's attorney. Also, since he had represented the Funeral Home initially, Davila was already familiar with the circumstances surrounding Ortiz's death. This evidence standing alone is not too weak to support the trial court's judgment.

Evidence which is contrary to the necessity of Davila's hiring is as follows. The Beneficiaries' attorney, Bonilla, had correspondence between him and the attorneys for the insurance company admitted into evidence. These letters evidenced ongoing negotiations in December 1989 and January 1990 between Bonilla, the insurance company, and its attorneys for an agreed settlement of $25,000.00. Bonilla also contacted the Estate's creditors, including Davila, who represented the Funeral Home, in an effort to get them to reduce their bills. He was successful in having the medical bills reduced by one-half; the Funeral Home refused to reduce its bill. At the time Bonilla was pursuing these negotiations on behalf of the Beneficiaries and the Estate, Davila filed a writ of garnishment on behalf of the Funeral Home on the designated insurance settlement money in order to secure the Funeral Home's claim for funeral expenses. This writ was subsequent-

ly dismissed by the court as improper. After this writ was dismissed, Davila filed Luera's application for an administration of the Estate as a creditor. No written notice of this application was sent to Bonilla, the Beneficiaries, or Abdala; the only notice was that posted on the Victoria County courthouse door. It was after Luera was appointed temporary administrator for the Estate that Luera hired Davila to represent the Estate in its recovery of damages. This contrary evidence, from which it could be inferred that Davila's hiring was not necessary for the Estate to recover damages, does not greatly outweigh the evidence in support of the trial court's finding.

We conclude that there is legally and factually sufficient evidence to support the trial court's finding that the attorney's fees of $6,250.00 awarded to Davila was just. We overrule the Beneficiaries' first point of error.

■ By their second point of error, the Beneficiaries contend that the evidence is factually and legally insufficient to support the trial court's finding and conclusion that the claim in favor of the funeral home was just and reasonable in the amount of $3,395.00. In order for a funeral home to recover funeral expenses from an estate, the funeral home must prove that the amount charged represents the reasonable value of the supplies and services furnished and that the amount charged is appropriate for the decedent, taking into consideration his or her station in life, the extent of property in the estate, and the ability of the estate to discharge the obligation without undue injury to the other creditors. *Roberts v. Schooler–Gordon Funeral Directors, Inc.*, 712 S.W.2d 646, 647–48 (Tex.App.–Amarillo 1986, writ ref'd n.r.e.); *Goeth v. McCollum*, 94 S.W.2d 781, 783–84 (Tex.Civ.App.–San Antonio 1936, no writ).

■ The evidence adduced at the hearing included a comparison between a low funeral bill for another Mexican citizen and the higher funeral bill for the deceased. The Funeral Home justified the differences in the bills with explanations of the different needs for preparing the bodies for transportation to different places in Mexico. Luera also pointed out that the estate of the deceased to whom the lower bill applied had no money and that this Estate was expecting insurance proceeds. It can be inferred that the Funeral Home took into account the decedent's station and the expected extent of the Estate in determining the amount of the charges.

The Beneficiaries' attorney questioned Luera regarding each item charged, establishing the amount of the bill. Luera testified that he was aware of the other creditors who had claims against the Estate and that he entered into negotiations with those creditors and settled the claims. It can be inferred that Luera was aware of the extent of the claims on the Estate and the ability of the Estate to pay the funeral expenses without injury to the other creditors; the other creditors were paid. We conclude that there is some evidence to support the trial court's finding and that the finding is not against the great weight and preponderance of the evidence. We overrule the Beneficiaries' second point of error.

The trial court's judgment is affirmed.