**Robin Dana PARHAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14-01-00411-CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 28, 2002.

Frances M. Northcut, Houston, for appellants.

Calvin A. Hartman, Houston, for appellees.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant, Robin Dana Parham, pleaded guilty to the felony offense of possession with intent to deliver a controlled substance, namely cocaine, weighing over 400

grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon Supp.2002). In one point of error, appellant complains the trial court erred in denying his motion to suppress evidence obtained during a consensual search of appellant. We affirm.

On August 4, 2000, officers and agents from the Houston Police Department, Narcotics Division, and the Drug Enforcement Agency were conducting surveillance at a hotel in southeast Houston [1] when they noticed a Hispanic male in a red truck acting suspiciously. The unidentified man got out of his truck and knocked on the door of room 205. A man identified as "Mr. Robinson" answered the door, and both men went downstairs and got into the truck. The truck left the hotel parking lot but then immediately turned back into the parking lot by another entrance and parked near the pool. Robinson exited the truck holding a cereal box. According to two of the officers who saw him, Robinson carried the cereal box in a way that suggested to them it contained something heavier than cereal. Robinson returned with the box to room 205, at which time he appeared to notice one of the police officers looking at him. Robinson knocked on the door, and appellant came out of the room. Both appellant and Robinson looked excitedly in the direction of the officers and pointed at them. After they went back inside, it appeared as though someone in the room was peeking out through the curtains.

Shortly thereafter, Robinson and appellant both left the room and walked in different directions. According to one of the officers, both men were "scanning" the parking lot as they walked. The two men later reunited, and Robinson handed appellant what appeared to be a credit-card

size room key. Robinson eventually returned to room 205 accompanied by a woman, retrieved a travel bag, loaded the bag into a car, and drove off. Appellant then returned to room 205, but before doing so, one of the officers observed him put his back against the wall and peek down the side of the hotel, as if "[h]e was hiding from somebody or trying not to be detected." Appellant then quickly walked back to room 205, then left the room carrying some clothes and went to room 215. Appellant later left room 215 wearing different clothes and walked down the street to a payphone, where he placed a call and eventually was picked up by a taxicab.

United States Customs Agent Scott Havens and Department of Public Safety Officer Charles Howard followed appellant's taxi to the Greyhound Bus Station in downtown Houston. There, Havens found Officer Denby, a uniformed HPD officer and informed him "[t]hey needed [Officer Denby's] assistance in detaining a suspect in a narcotics investigation." As the three men approached appellant, Officer Denby testified he put his hand on appellant's shoulder and said to him, "We need to speak to you." Havens then showed appellant his badge and identified himself as a customs agent. According to Havens, when he began talking to appellant, Officer Denby stood to one side, while Howard moved around to stand behind appellant. Havens testified he asked appellant if he had any weapons, to which appellant said "No." Havens then asked appellant "if he'd mind if I check." Appellant said "No" and began to raise his arms. At this time, Howard took an ice cream cone appellant was holding and threw it in a garbage can. Havens began by patting appellant's waist area and felt a bulge, which he said he felt

---

**1.** None of the relevant individuals or hotel rooms identified in this appeal were the sub-ject of this initial surveillance.

could have been a weapon. He immediately lifted appellant's shirt to reveal what Havens identified as "a brick of cocaine stuffed in [appellant's] pants." Havens then placed appellant under arrest for possession of narcotics.

Appellant filed a written motion to suppress all evidence recovered as a result of an allegedly illegal detention and search. Following a hearing, at which appellant did not testify, the trial court denied the motion. Appellant then pleaded guilty without an agreed recommendation as to punishment. After a pre-sentence investigation hearing, the trial court sentenced appellant to twenty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division, and fined him $10,000. Appellant timely filed a notice of appeal from the trial court's denial of his pre-trial motion to suppress. *See* Tex. R.App. P. 25.2.

■ In his sole point of error, appellant contends the trial court erred in denying his motion to suppress because the cocaine was obtained from appellant as the result of an illegal search and seizure under the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. In reviewing the trial court's ruling, this court gives almost total deference to the trial court's determination of historical facts. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, a trial court's ruling on a mixed question of law and fact, such as whether an officer had reasonable suspicion or probable cause, should be reviewed de novo on appeal if its resolution does not turn on an evaluation of credibility and demeanor. *See id.*

Appellant first argues he was "seized" for Fourth Amendment purposes when he was approached in the bus station by three officers. Not every encounter between police and citizens implicates the Fourth Amendment. Such encounters are considered consensual, provided a reasonable person would feel free to disregard the police and go about his business. *Hunter v. State,* 955 S.W.2d 102, 104 (Tex.Crim. App.1997) (citing *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991)). The dispositive question in this case is whether, looking at all of the circumstances, the officers conveyed a message to appellant that compliance with their requests was required. *See id.*

We conclude appellant was "seized" within the meaning of the Fourth Amendment. Appellant was approached by three officers, one of whom was in uniform. The uniformed officer touched appellant on the shoulder and told him, "We need to speak to you." As Agent Havens began speaking, the other plain-clothes officer moved behind appellant. All three officers stood between two to four feet from appellant during the encounter. At no time did Havens inform appellant he did not have to talk to them or allow the officers to search him. Under these facts, we conclude a reasonable person in appellant's position would have felt compliance with the officers' requests was required.

■ The Fourth Amendment does not forbid all searches and seizures, but only *unreasonable* searches and seizures. *Davis v. State,* 947 S.W.2d 240, 242 (Tex. Crim.App.1997) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A police officer may stop and briefly detain a person when the officer has reasonable suspicion that criminal activity "may be afoot," even if the officer lacks probable cause. *Woods v. State,* 956 S.W.2d 33, 35 (Tex.Crim.App.1997) (quoting *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884). In reviewing the officer's reasonable-suspicion determination, we must look at the "totality of the circumstances" to see whether the officer had a "particularized

and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu,* 534 U.S. 266, ——, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); *see also Garcia v. State,* 43 S.W.3d 527, 530 (Tex. Crim.App.2001). This process allows officers to draw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them. *Arvizu,* 534 U.S. at —— – ——, 122 S.Ct. at 750–51. Finally, the determination that reasonable suspicion exists need not rule out the possibility of innocent conduct. *Id.* at 753, 122 S.Ct. at 753.

■ We conclude the facts as established at appellant's motion to suppress hearing were sufficient to warrant an investigative detention. HPD officers and DEA agents witnessed highly suspicious activity (which they believed to be a narcotics transaction) taking place at a hotel. While appellant was not directly involved in the observed activity, he was in the hotel room to which one of the participants returned carrying the possible contraband. Shortly thereafter, appellant himself behaved in ways the officers considered suspicious, including pointing and expressing excitement over being watched, "scanning" the parking lot while walking away from his room, peeking around the corner as if hiding from somebody while returning to his room, and taking clothes from one room to a different room in the same hotel and changing clothes in that room. Considering the totality of the circumstances, we conclude these facts and the rational inferences from these facts are sufficient to create reasonable suspicion. Accordingly, the officers' investigative detention of

appellant was not unlawful, and appellant's consent to search was not tainted by an illegal arrest and was valid.

■ Appellant also argues the search was illegal because it exceeded the scope of consent granted by appellant. Agent Havens testified appellant agreed to allow Havens to check him for weapons. Appellant's consent to search was not limited to a "pat-down" search of appellant's outer clothing. Even if it were so limited, Havens testified he felt a bulge in appellant's waist area which he thought could have been a weapon.[2] The Fourth Amendment does not require the suppression of contraband that is discovered while conducting a legitimate search for weapons. *See Michigan v. Long,* 463 U.S. 1032, 1050, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983). We overrule appellant's sole point of error.

The trial court's judgment is affirmed.

---

**2.** Appellant describes Havens's claim that the bulge felt like a weapon as "preposterous." However, because this is a question of credibility and historical fact, we must defer to the trial court's determination. *Guzman,* 955 S.W.2d at 89.