Affirmed and Opinion on Remand filed March 16, 2004









Affirmed and Opinion on Remand filed March 16, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-00837-CR

____________

 

LOUBABA ALZARKA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 21st
District Court

Washington County, Texas

Trial Court Cause No. 13,166

 



 

OPINION 
ON  REMAND

Appellant, Loubaba Alzarka, appeals from
the denial of her motion to suppress.  
On original submission, this court dismissed appellant=s appeal on the
theory that her right to appeal had been waived as part of her plea
agreement.  Alzarka v. State, 60 S.W.3d 203, 206 (Tex. App.CHouston [14th Dist.] 2001, pet.
granted).  On discretionary review, the
Court of Criminal Appeals disagreed and held that the appellant had not waived
her right to appeal.  Alzarka v. State,
90 S.W.3d 321, 324 (Tex. Crim. App. 2002) (en banc).  We now consider the merits of appellant=s appeal on
remand.  








Appellant was indicted for two counts of
(1) possession of more than one but less than four grams of cocaine and (2)
possession of more than four grams but less than 200 grams of Aphencylidine.@[1]  Subsequently, appellant pled guilty to both
counts.  Pursuant to the plea agreement,
the trial court assessed appellant=s punishment in
both cases at five years= deferred adjudication and a $1,500
fine.  Appellant presents three points of
error for review: (1) the trial court erred under the Fourth Amendment to the
United States Constitution in overruling appellant=s motion to
suppress, (2) the trial court erred under Article I, Section 9 of the Texas
Constitution in overruling appellant=s motion to
suppress, and (3) the evidence was legally insufficient to sustain the
allegations as to the second count of the indictment.  We affirm. 
  

Both appellant and the State stipulated to
the facts set out in the offense report prepared by Investigator Barnett (ABarnett@) of the Narcotics
Task Force.  The report sets out the
facts leading up to and surrounding the challenged search.   Barnett received a telephone call from a
confidential informant advising that a female known to the informant wanted to
sell Awater,@ also known as PCP
(phencyclidine).  In addition to giving a
description of appellant, the informant told Barnett that the appellant was
known as Lulu.  Barnett already knew of appellant.  He had been in a barbershop the previous
March where he witnessed a black man come into the barbershop asking a woman,
who matched the description of appellant, for Awater.@  The informant arranged for Barnett and
appellant to meet.  








The informant advised Barnett that
appellant was en route to meet him at the Winkleman Village on S.H. 290
East.  Further, the informant explained
that appellant would be traveling as a passenger in a maroon Buick with faded
paint driven by a black male.   While
driving on 290 East, Barnett was passed by a car matching the informant=s
description.  Barnett began following the
car.  While keeping pace with the car,
Barnett observed it was  traveling 80
miles per hour; the posted speed limit, however, was 70 miles per hour.  Having observed the traffic violation, Barnett
requested assistance from the Washington County Sheriff=s Department to
engage in a traffic stop.  Before a stop
could be made, the driver began slowing and turned into the parking lot of a
convenience store.  Both the driver and
appellant exited the car and entered the store. 
Subsequently, both Barnett and the deputy entered the store.  The driver was told that he had been observed
speeding.  The driver was identified as
Leroy Henderson, and appellant was identified as Loubaba Alzarka.  

Henderson told the officers that he was
traveling to Andrews Café in Chappell Hill. 
Barnett noted that this destination is known as a high drug traffic and
high drug activity area.  Barnett asked
Henderson if he was transporting or possessed any illegal drugs.  When Henderson answered negatively, Barnett asked
him if he would consent in writing to a search of the vehicle.  About two to three minutes into the search,
appellant said she was on her menstrual cycle and needed to use the restroom.  She also stated that she needed her purse
located on the floor of the car.

Barnett told appellant that he would need
to search the purse for weapons before giving it to her.  Barnett noted that appellant became very
nervous as he began to search the purse. 
He opened the purse and saw a small leather bag with pull strings. It
was four to six inches in height and three inches in width, which would have
made it large enough to conceal a small handgun or large knife.  When Barnett picked up the bag he felt a
heavy object.  A search of the bag
revealed a plastic bag with several white rocks of crack cocaine and a brown
glass bottle labeled as vanilla extract. 
Barnett opened the bottle and noticed that the liquid did not smell like
vanilla.  No sanitary napkins or other
feminine hygiene products were found in the purse. 

Appellant was handcuffed and given her Miranda
warnings.  She was questioned about the
identity of the liquid, but she did not respond.  The rocks tested positive for cocaine in a
field test. The liquid was confiscated and sent to the Department of Public Safety
Laboratory.  The laboratory subsequently
reported the liquid was phencyclidine.  








 In
her first and second points of error appellant contends the trial court erred
in denying her motion to suppress in violation of both the Fourth Amendment to
the United States Constitution and Article I, Section 9 of the Texas
Constitution.  In reviewing a trial court=s ruling on a
motion to suppress, we apply a bifurcated standard, giving almost total
deference to the trial court=s determination of
historical facts and reviewing de novo the court=s application of
the law of search and seizure.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,  955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  Where the trial court did not
make explicit findings of historical fact, we review the evidence in the light
most favorable to the trial court=s ruling, assuming
that the court made implicit findings of fact supported in the record that
buttress its conclusion.  Camouche,
10 S.W.3d at 328.   

Appellant asserts that Barnett was not
justified in searching her purse in the absence of objective, articulable facts
that would suggest she was armed or dangerous. 
Accordingly, our analysis is confined to Areasonableness,@ not probable
cause.  Worthey v. State, 805 S.W.2d 435, 436 (Tex.
Crim. App. 1991) (citing Terry v. Ohio, 382 U.S. 1 (1968)).  The Supreme Court has explained that Athere is narrowly
drawn authority to permit a reasonable search for weapons for the protection of
the police officer, where he has reason to believe that he is dealing with an
armed and dangerous individual, regardless of whether he has probable cause to
arrest the individual for a crime.@  Terry, 382 U.S. at 27.  The Court has also indicated that the Asearch for weapons
may extend beyond the person in the absence of probable cause.@  Worthey, 805 S.W.2d at 437-38 (citing
Michigan v. Long, 463 U.S. 1032 (1983)). 
Before an officer may search the interior of a purse, Aspecific and
articulable facts@ must appear in the record to indicate
that a weapons search is warranted.  Id.
at 438. 








Judging the evidence in a light most
favorable to the trial court=s ruling, we find
the evidence supports a conclusion that Barnett was concerned for his safety
when he conducted the search of appellant=s bag.
Notwithstanding appellant=s arguments, we find it determinative that
appellant was under investigation for narcotics trafficking.  Barnett pursued appellant based upon an
articulable suspicion that she was trafficking in illegal drugs.  The information provided by the confidential
informant was shown by subsequent events to be highly credible. For example,
the informant correctly identified the route appellant would be taking and
described with some degree of specificity the car in which she would be
riding.  Moreover, the informant=s basis for
knowledge was not the product of hearsay or conjecture.  The informant personally arranged the meeting
between Barnett and appellant. 
Therefore, Barnett was justified in approaching appellant with
caution.  A[W]eapons and
violence are frequently associated with drug transactions@; therefore,
officers may reasonably believe that such individuals are armed and
dangerous.  Carmouche, 10 S.W.3d at 330 (citations
omitted).  

The scope of the search of the purse in
the instant case was valid.  In such an
instance, the least restrictive search necessarily begins by Afrisking@ the outside of
the bag.  See Worthey, 805 S.W.2d at 439.  The offense report reveals that Barnett
entered the small leather bag only after feeling a heavy object and surmising
that the bag was large enough to contain a handgun or knife. At this point,
Barnett did what was minimally necessary to investigate the presence of a
weapon by looking in the bag.  See id.  








Additionally, appellant argues that even
if we could conclude that Barnett was authorized to view the contents of the
leather bag, the search relative to the vanilla extract bottle went too
far.  The Fourth Amendment does not
require the suppression of contraband that is discovered while conducting a
legitimate search for weapons.  See
Parham v. State, 76 S.W.3d 60, 64 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d) (citing Michigan
v. Long, 463 U.S. 1032, 1050 (1983)). Moreover, the discovery of the
rocks of cocaine gave Barnett probable cause to believe the bag contained
additional contraband.  See Cunningham
v. State, 11 S.W.3d 436, 440 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (explaining that the
discovery of what the police officer Abelieved to be
marijuana residue gave him probable cause to believe the vehicle contained a
larger quantity of marijuana@).   Therefore, Barnett was authorized to search
the other contents of the bag. 
Alternatively, Barnett was authorized to search appellant incident to
the arrest.  

We overrule appellant=s first and second
points of error.[2]


Appellant argues in his third point of
error that the evidence is legally insufficient to sustain the allegations in
the second count of the indictment.  The
crux of appellant=s argument is that the indictment alleged that
appellant was in possession of Aphencylidine,@ which is not
listed as a controlled substance under the Texas Controlled Substances
Act.  However, the Court of Criminal
Appeals has recognized as a Arule that the
misspelling of a word does not render invalid an otherwise good indictment or
information if the sense is not affected and the meaning cannot be mistaken.@  Ablon v. State, 537 S.W.2d 267, 269 (Tex.
Crim. App. 1976) (indicating that the misspelling of  Aheroin@ as Aherion@ did not vitiate
the validity of an indictment in a prior case). The spelling of these words is
very similar; the spelling error involves only the omission of the letter Ac.@  The misspelling in the indictment is fatal if
it prejudicially misleads appellant in the preparation of her defense; however,
Athe law does not
consider as fatal the use of an incorrect letter.@ In re Cockrell,
493 S.W.2d 620, 625 (Tex.
App.CAmarillo 1973, writ ref=d n.r.e.). 








It is difficult to see how appellant could
have associated Aphencyldine@ with anything
other than phencyclidine.  It is plain
from the record that these proceedings concerned the possession of
phencyclidine.[3]  Barnett=s investigation
report, to which appellant stipulated, reveals that appellant was under
investigation for phencyclidine. 
Moreover, the Department of Public Safety=s lab results
identified the substance in the vanilla extract bottle as phencyclidine.  Faced with this evidence, appellant pleaded
guilty to the second count in the indictment.[4]  Accordingly, we overrule appellant=s third point of
error.       

The judgment of the trial court is
affirmed.

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion on Remand filed March 16, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The
misspelling of Aphencyclidine@ serves
as the basis for appellant=s third point of error.  





[2]  Although our
discussion has focused exclusively on the Fourth Amendment, appellant failed to
demonstrate how the result would be any different under Article I, Section 9 of
the Texas Constitution.  Johnson v.
State, 864 S.W.2d
708 (Tex. App.CDallas 1993), aff=d,
912 S.W.2d 227 (Tex. Crim. App. 1995) (en banc) (indicating
that it is appellant=s burden to show how the Fourth
Amendment conflicts with the Texas Constitution). The Court of Criminal Appeals held in Heitman v. State, 815
S.W.2d 861, 690 (Tex.
Crim. App. 1991) that it is not expressly
bound by the Supreme Court=s holdings when analyzing Article I, Section 9.  However, the court advised attorneys
addressing multiple constitutional issues to Acarefully
separate federal and state issues into separate grounds and provide substantive
analysis or argument on each separate ground.@  Id. at 691n.23.      





[3]  Phencyclidine
is listed in the Texas Controlled Substances Act as a controlled
substance.  Tex. Health & Safety Code Ann. ' 481.102 (Vernon 2003)





[4]  Interestingly,
the judicial confession signed by appellant also contains the misspelled Aphencyldine.@